# Houser *against* Irvine.

A partnership, dissolved for future operations, remains in force for closing the business of the concern; and the liquidating partner retains his former power to bind the firm in things within the scope of the business committed to him. A payment by him on account of a simple contract debt of the firm, is such an acknowledgment as will take the claim out of the operation of the Act of Limitations.

ERROR to the Common Pleas of *Centre* county.

Daniel Houser and Frederick Sherk, executors of Jacob Houser, deceased, against John Irvine, who survived Franklin B. Smith, partners trading in the name of Smith & Irvine.

Smith and Irvine were partners in trade until the 13th of February 1832, and previous to that time were indebted to the plaintiffs' testator by simple contract in the sum of $1129.32. On the 11th of May 1832, after the dissolution of the partnership, Franklin B. Smith, one of the partners, settled the account, and gave a note of the firm to the present plaintiffs for the amount due. In this action, the plaintiffs declared upon this note, as well as upon

III. — 44

the several notes which formed the consideration of it.    The defendants pleaded *non assumpsit infra sex annos,* and upon this plea the cause was tried.

The plaintiffs first offered in evidence the note of Smith & Irvine for $1129.32, given by Smith after the dissolution.  This the defendant objected to, on the ground that one partner had no right to give the note of the firm after the partnership was dissolved; and the evidence was rejected by the court.

They then proceeded to show the consideration of the note as a distinct substantial ground of recovery, and exhibited a book in which former notes given for the same consideration had been entered, and afterwards marked cancelled.    To explain the cancellation of the former notes, and show they were condensed into another, and not paid, this note was then admitted in evidence. The defendant denied their right to recover either on the note or its consideration, but said, if the court should be of opinion that the plaintiffs could recover on the note, that they ought only to recover the balance due, and he thereupon stated that a payment of $300 had been made on account of it on the 1st of September 1833, and showed the receipt from a book already in evidence, which the plaintiffs admitted.

The plaintiffs contended that the payment of $300 made on the 1st of September 1833, was such an acknowledgment as took the case out of the operation of the Statute of Limitations.    But the court below was of a different opinion, and thus instructed the jury :

"The defendant is not to be prejudiced by his exhibition of the receipt for $300; for the note not being the cause of action on which the plaintiffs can recover, the implied admission of the defendant did not go to the cause of action on which the plaintiffs now rely.    At most, it could only operate to take the *note* out of the Statute of Limitations, since it was to that specifically that the payment of the $300 applied; but the note cannot be the ground of the plaintiffs' recovery in this action, for it was given by Smith to one of the executors after the dissolution of Smith & Irvine was known to Daniel Houser.    Indeed, it is in evidence only to explain a collateral fact; and the $300 payment was given by the defendant to apply only in the event of that note being treated as the ground of recovery.    The real cause of this action, therefore, lies beyond the note; it accrued more than six years before suit brought, and there is no evidence before the court and jury to exempt it from the operation of the Statute of Limitations. Your verdict, therefore, should be for the defendant."

*Hale* and *Burnside,* for plaintiffs in error.    A part payment by one partner after dissolution will prevent the operation of the Statute of Limitations.    *Doug.* 652; *Smith's Lead. Cas.* 233; 14 *Pick.* 387.

[Houser v. Irvine.]

*Blanchard*, for defendant in error, contended that after the dissolution of a partnership, one of the partners cannot give the note of the firm, or make such an acknowledgment as will revive a debt barred by the Act of Limitation, and bind him who had been his copartner.    1 *Peters's S. C.* 373; 15 *Johns.* 424; 3 *Johns.* 528; 4 *Johns.* 227.

The opinion of the Court was delivered by

GIBSON, C. J.—Smith and Irvine dissolved their partnership in February 1832; Smith taking the stock on hand, and becoming the liquidating partner.    In the following May, Smith and Houser settled the account between the partnership and the latter, consisting of three promissory notes drawn by the firm on the one hand, and a book account of goods sold by it on the other; and Smith gave a promissory note in the name of the firm for the balance.    This suit is brought for the debt thus consolidated, and the plaintiff has counted, not only on the note given to secure it, but also on each of the notes included in the settlement.    All these notes were demandable six years before the institution of the suit; and did the case rest here, the action would be barred by the statute.    But it came out in the course of the evidence, that Smith had paid $300 on the note for the consolidated debt within the six years; and the question is, whether that was such an acknowledgment of the partnership debt as will raise a promise by the firm.

It may be affirmed that a partnership, though dissolved for future operations, remains in force for closing the concern; and that the liquidating partner retains his former power to bind the firm in things within the scope of the business committed to him. The proper limitation to the exercise of it is, that it be restrained to acts necessary to be done for the beneficial transaction of it. Such is the ruling principle in the case of *Davis & Desauque*, (5 *Whart.* 530), in which it was held that a liquidating partner may renew a note drawn by the firm, and even borrow money on its credit to pay its debts, in order to prevent a sacrifice of its effects.    And this is entirely consistent with *Levy* v. *Cadet*, (17 *Serg. & Rawle* 126), in which a partner who had suffered judgment to go against himself after the firm had made a general assignment, was not allowed to revive the debt by confessing its existence during a trial with the other partner who had pleaded to issue.    The reason of the distinction between the two cases is obvious.    The theory of the law on this head, as held by the courts of Pennsylvania, is not that the old promise is revived, but that the subsequent confession of the debt is evidence of a new one; and he who has no authority to act for another, cannot bind him by acknowledging that he is indebted, or by expressly promising for him that he shall pay.    Now by the dissolution of a partnership, the power which each had to bind the others is at an end, except for the purpose already indicated — to finish what remains to be

[Houser v. Irvine.]

done in order to close its concerns. In *Levy* v. *Cadet*, therefore, the one partner was not allowed to bind the other by creating a promise for him, because the partnership was ended by the declared insolvency of the firm, and the winding up of its business had been transferred to trustees. His confession of the debt was not the consequence of an act done in the liquidation of it, for his authority over it had expired for that and every other purpose. But what was the authority of Smith in this instance? It was to settle the partnership debts, and pay them out of the effects in his hands. Having that authority, payment by him singly must be attended with the consequences of payment by both. Though made by one, it was, in contemplation of law, the act of both; and it is consequently evidence of a promise by both.

The subsequent payment was made on the foot of the note given by Smith after the dissolution; and hence the jury were directed that as this security, though given for what was once a partnership debt, was, in contemplation of law, his separate note, his acknowledgment of it as a debt exclusively his own, would not be evidence of a promise to charge his partner. But it was not exclusively his own, and there lies the fallacy. To say nothing of the governing principle in the case of *Davis & Desauque*, already quoted to show that he had authority to renew the partnership notes, he had indisputable power to settle its accounts; and as it has been often ruled that a promissory note may be given in evidence to support a count for an *insimul computassent*, it would be strange if an action might not be maintained on it as an instrument when drawn by a liquidating partner in the name of the firm. It is immaterial, therefore, whether the giving of the last note cancelled the preceding ones. The giving of a note for an antecedent debt, is not payment of it unless it was received with that intent; but whatever the intent in this instance, the payment in part in discharge of the partnership debt, by whatever instrument secured, was evidence of a promise by the firm, which, having been made within the six years that preceded the commencement of the suit, was not within the statute.

Judgment reversed, and *venire de novo* awarded.