GRAY *v.* OXNARD BROS. CO. *et al.*

*(Supreme Court, Special Term, New York County.   June, 1890.)*

1. RECEIVER—ACCOUNTING—SUGAR TRUST.

A corporation was dissolved for entering into a partnership for the illegal purpose of monopolizing the manufacture and sale of sugar, and a receiver of the corporation was appointed with directions to convert its property into money. *Held,* that as the partnership agreement was illegal, the receiver was not entitled to an accounting of the partnership property.

2. SAME—APPOINTMENT.

The receiver having no power, by virtue of his position, to interfere on behalf of the public, and the partnership having ceased on the dissolution of the corporation, and the receiver never having been a member of the partnership, the fact that the other partners are continuing to carry on the illegal business furnishes no reason for a court to entertain the receiver's suit to have the contract declared illegal, and to have a receiver and an accounting of the partnership property.

Action by Henry Winthrop Gray, as receiver of the North River Sugar Refining Company, against the Oxnard Brothers Company and others. Defendants demur to the complaint.

*John M. Bowers,* for plaintiff.   *Elihu Root* and *John E. Parsons,* for defendants.

INGHAM, J.   The complaint alleges the dissolution of the North River Refining Company, and the appointment of the plaintiff as receiver thereof; that in 1887 the said corporation and this defendant, with others who are parties to this action, executed an agreement, which is set out at large in the complaint, "with the purpose and intent, on the part of the said corporation and the individuals entering into said agreement, to injure the people of the state of New York, and to abuse the powers conferred by its statutes on corporations organized thereunder, and for the purpose of monopolizing the manufacture and sale of refined sugar in the state of New York, and, so far as possible, in the United States of America, and to enable the said several corporations and individuals to control at will the production and price of sugar in the state of New York, and in the United States." The complaint also alleges that the agreement was in violation of the laws of the state of New York, and of the United States of America, and against the right of the people of the country, and the wrong done thereby is not yet completed and finished, but is a

continuing wrong. It is further alleged that, when plaintiff entered upon the duties of his office and endeavored to get in the assets, property, and choses in action of the said corporation, he discovered only a certain building in the city of New York with some machinery, and, in addition thereto, the sum of $23,594.66 in cash, possession of which, and of the building and machinery, he obtained. It is also alleged that the effect of the said agreement was that on the 1st of October, 1887, the said North River Company and certain of the defendants in this action, including this defendant, formed a partnership under the name of the "Sugar Refineries Company" for the purpose specified in the said agreement, and that, by the entering of the aforesaid judgment dissolving the said North River Company and appointing this plaintiff as its receiver, the said copartnership became dissolved, as by the death of one of its members, "and that immediately, and thereupon, this plaintiff became entitled to an account of the assets and profits of said copartnership, and to have the same wound up and dissolved. And he now, as receiver of the said defunct corporation, both by reason of its death by the judgment aforesaid, and by reason of the right of said corporation at any time to retire from the illegal combination hereinabove set forth, prays judgment that the said partnership created by the aforesaid agreement be adjudged dissolved," and for a receiver and injunction, an accounting, a division of the copartnership property, and for further relief. There is no allegation that any property of the North River Company ever came into the hands of the defendants, or either of them, or that the corporation had, at the time of its dissolution, any property except such as the plaintiff has taken possession of, and no allegation that there are any creditors of the corporation.

From these allegations there are certain legal inferences. One of them is that, on the dissolution of the North River Company, the copartnership that existed in pursuance of the agreement set out in the complaint became, by operation of law, dissolved, and any copartnership property which existed at the time of such dissolution vested in the surviving partners. No affirmative action on the part of the representative of the dissolved corporation was necessary to dissolve such copartnership; nor is a decree of the court necessary. The copartnership is dissolved by operation of law. The representatives of a deceased partner have no legal interest in the firm assets. What they have is the right to require the application of the assets to the payment of the partnership debts, and an equitable interest in any surplus remaining after the payment of the firm debts. *Williams* v. *Whedon*, 109 N. Y. 338, 16 N. E. Rep. 365. This right and equitable interest, however, arises out of the relation that exists between the parties, and this relation is based upon the contract of partnership. Without such a contract there can be no copartnership, and without such a copartnership there can be no right to require the surviving partners to apply the assets to the payment of the firm's debts, or to call them to account. This right, therefore, depends on the existence of a valid contract of copartnership. The agreement, however, which is set up in the complaint, and therein alleged to constitute the parties partners, is alleged to be an illegal agreement, and this court, at circuit and at general term, has adjudged that it is illegal, and has, at the suit of the people of the state, dissolved the North River corporation for entering into the agreement. See *People* v. *Refining Co.*, 7 N. Y. Supp. 406. The agreement, therefore, upon which depends the plaintiff's right to call the defendant to account is an illegal contract "created," as is said by Mr. Justice Daniels, "for an unlawful object." And it is settled in this state that the courts will not enforce such an agreement. The precise question here presented was decided by the court of appeals in *Woodworth* v. *Bennett*, 43 N. Y. 276. There four parties made an agreement in the nature of a copartnership to bid for public work in the Seneca-River improvement. The bid was put in in the name of the plaintiff alone, and the bid was sold for $400, which it was agreed was to be collected

by the plaintiff, and, when collected, each should have $100; and the amount was collected, and one of the parties sought to recover the $100. This arrangement for a joint interest was illegal, because contrary to the statute. The supreme court held that it could be recovered upon the ground that, as between the parties, the illegal contract had been fully executed when the plaintiff received the money, and he then became a mere depository, and held the money for the use of the other partners. This was reversed, the court of appeals holding that to enforce the obligation to pay the $100, the illegal contract had to be enforced, CHURCH, C. J., saying: "It has been laid down as a test that whether a demand connected with an illegal transaction is capable of being enforced at law depends upon whether the party requires any aid from the illegal transaction to establish his case. * * * But here the original partnership was illegal." The chief judge then, in commenting on *Brooks* v. *Martin*, 2 Wall. 70, says: "If a lawful firm should receive funds from an illegal traffic or business, it may be that the illegality would be regarded at an end, and a division of the money enforced by virtue of the obligation of the members under the contract of partnership. This is the utmost limit to which the rule can be carried. In such a case the obligation would not arise out of the illegal purposes of the firm, nor would the division carry out any of those purposes, but the obligation would arise out of the control of the partnership itself. Here the contract was illegal. * * * The money obtained by this bid belonged to the firm, and the plaintiff could have been compelled to divide, if the firm had been lawful, by force of the contract organizing it. In this case he also agreed to pay the money, and defendants ask the court to compel him to perform this obligation. The answer to it is obvious. There is no obligation, because it was incurred contrary to law. It rests upon the contract of partnership, and that is void for illegality. In law there was no partnership, and none of the parties obtained any right under the contracts creating it." I have quoted from this case at large, as it seems to be in point, and decisive of the questions involved. This case has never, so far as I am aware, been questioned, but it is cited with approval in many cases, and the same principle has been lately reaffirmed in *Leonard* v. *Poole*, 114 N. Y. 371, 21 N. E. Rep. 707.

The plaintiff presents two answers to the objection: *First.* That the contract is executed, and this being accomplished, and the members of the trust-board in possession of the property in which the corporation which plaintiff represents had an interest, no public good is to be subserved by allowing them to retain it in fraud of said corporation. This is answered by *Woodworth* v. *Bennett, supra.* There, as here, the contract was executed, and one of the parties had the money in his hands; but the answer to the same proposition was then said "to be obvious. There is no obligation, [to pay the money in his hands,] because it [the agreement to pay] was incurred contrary to law; it rests upon the contract of partnership, and that is void for illegality." And, *second*, that the wrong is a continuing one. It is now doing harm to the people of the state, and they have an interest in suppressing it, paramount to all private interests, and while the courts will not lend them aid to the enforcement of an illegal contract, and might not lend them aid even in its avoidance, when mere private interests are involved, yet they will not allow the fact that all parties before the court are wrongdoers, to be used as a weapon to secure the continuance of a public wrong. But the plaintiff, as receiver of this dissolved corporation, has limited authority. His power is defined by the judgment and the statute under which he was appointed. By the judgment the plaintiff is directed to proceed, according to law, to convert into money all the property and assets held or owned by the North River Company, or to which it might be entitled, and by the statute the receiver is authorized to collect the property of the corporation, and distribute it as therein directed. There is no power given to interfere on behalf of the public. It is

the property of the corporation that he is to recover and divide. So far as is necessary, to recover this property of the dissolved corporation, he has power to sue, but it is only in relation to the property of the corporation of which he is appointed receiver that he has such power. This receiver is not a party to the illegal agreement set up in the complaint. He is not continuing business under it, and he has no interest in having it cancelled. As before stated, on the dissolution of the corporation the copartnership that existed was dissolved, and the property vested in the surviving partner. The appointment of this plaintiff as receiver did not vest him with any of the copartnership property, nor give him any right to interfere with the management of the copartnership; and, as he could not enforce the right to have an accounting under the original agreement because of its illegality, he had no right that a court of equity can enforce, or which would justify a decree that a contract between parties with whom he had no relations, and to which he was not a party, should be cancelled or declared illegal. The plaintiff cannot ask for a decree to withdraw from the copartnership, because he is not, and never has been, a member of it, and the dissolution of the corporation of which he is receiver, of itself, and by operation of law, dissolved any relation that existed between that corporation and the others constituting the copartnership. The case of *Carbon Co.* v. *McMillin*, 6 N. Y. Supp. 433, affirmed in court of appeals, (23 N. E. Rep. 530,) does not apply, for in that case the receiver, who was awarded the fund that had been paid into court, was the receiver of the illegal copartnership, which was insolvent, not the receiver of the property of one of the individual copartners, and it was there held that such a receiver was entitled to recover the purchase price of goods sold by the copartnership during its existence. The same question would be presented if in this case creditors of the illegal copartnership had procured the appointment of a receiver of the copartnership property, and he should sue to recover a debt due to the copartnership; but plaintiff is not receiver of the copartnership, and, for the reason before stated, has no interest in the copartnership property, and the creditors of the dissolved corporation, if any existed, have not the right to have the assets of the copartnership applied to the payment of their debts.

I have examined all the cases to which my attention has been called by the counsel for the plaintiff, but none of them are controlling upon the questions here presented, and applying the authorities in this state, which are controlling upon me, I have come to the conclusion that the complaint states no cause of action in favor of the plaintiff. The questions discussed were not presented to me on the application for an injunction in this action, and, as that motion was denied for other reasons, these questions were not considered. I think, therefore, that the demurrer should be sustained, and judgment ordered for defendant. In view of the fact that the plaintiff sues as an officer of the court, and after leave had been obtained, I think no costs should be awarded against him, and that he should have leave to amend within 20 days, if he is so advised.